IN THE UNITED STATES DISTRICT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DIEDRA FERGUSON, INDIVIDUALLY § | | |
| AND AS NEXT FRIEND OF § | | |
| K. H., III, A MINOR § | | |
| § | | |
| VS. § | CIVIL ACTION NO. _____ | |
| § | | |
| TOYOTA MOTOR ENGINEERING § | | |
| & MANUFACTURING NORTH § | | |
| AMERICA, DBA TOYOTA MOTOR § | | |
| MANUFACTURING NORTH AMERICA, § | | |
| INC., TOYOTA MOTOR CORPORATION § | | |
| LTD., TOYOTA MOTOR NORTH § | | |
| AMERICA, INC., AND TOYOTA § | | |
| MOTOR SALES, U.S.A., INC. and § | | |
| FUJIO CHO, § | | |

## PLAINTIFFS' ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, DIEDRA FERGUSON, INDIVIDUALLY, AND AS NEXT FRIEND OF K. H., III, A MINOR, hereinafter referred to as Plaintiffs, and files this their Original Complaint relating to their allegations against TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, DBA TOYOTA MOTOR MANUFACTURING NORTH AMERICA, INC., TOYOTA MOTOR CORPORATION, LTD., TOYOTA MOTOR NORTH AMERICA, INC., TOYOTA MOTOR SALES, U.S.A., INC. and FUJIO CHO, hereinafter referred to as Defendants and for cause of action, would respectfully show unto the Court and Jury the following:

### PARTIES

1. Plaintiffs are residents of Huntsville, Walker County, Texas.

2. Defendant, TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, DBA TOYOTA MOTOR MANUFACTURING NORTH AMERICA, INC., is a corporation doing business in the state of Texas and may be served with process by serving its

registered agent for service of process at CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

3. Defendant, TOYOTA MOTOR CORPORATION, LTD., is a non-resident foreign corporation, organized and formed under the laws of Japan. Toyota Japan is located in Japan, with its principal place of business and home office at 1, Toyota-cho, Toyota-Shi, ACH 471-8571 Japan. The President of Toyota Motor Corporation is Mr. Fujio Cho. Although Toyota Japan does business in the state of Texas, it does not maintain a regular place of business in this state, nor does it maintain a designated agent upon whom service of process may be made in Texas. Service is therefore requested through the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil or Commercial Matters, (20 UST 361 (U.S. Treaties and other International Agreements); 658 U.N.T.S. 163 (United Nations Treaty Series); TIAS No. 10072 (U.S. Treaties & other International Acts), and issuance of the appropriate documents is being requested.

4. Defendant, TOYOTA MOTOR NORTH AMERICA, INC., is a corporation doing business in the state of Texas and may be served with process by serving its registered agent for service of process at CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

5. Defendant, TOYOTA MOTOR SALES, U.S.A., INC., is a corporation doing business in the state of Texas and may be served with process by serving its registered agent for service of process at at CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

6. Defendant, FUJIO CHO, may be served at 1, Toyota-Cho, Toyota-Shi, ACH 471-8571 Japan.

## SUBJECT MATTER JURISDICTION

7. Plaintiffs were residents and citizens of the State of Texas at the time of the accident giving rise to this case and at the time of filing of this suit. Defendant, Toyota Motor Corporation

is incorporated under the laws of Japan, and has its principal place of business in Japan. Defendant, Toyota Motor Sales, U.S.A., Inc. is incorporated under the laws of California, and has its principal place of business in California. Defendant, Toyota Motor Engineering & Manufacturing North America, DBA Toyota Motor Manufacturing North America, Inc., is incorporated under the laws of Kentucky, and has its principal place of business in a state other than Texas. Defendant, Toyota Motor North America, Inc. is incorporated under the laws of California, and has its principal place of business in California. Since complete diversity of citizenship exists between the parties, and the matter in controversy exceeds the sum of seventy-five thousand dollars ($75,000), exclusive of interest and costs, jurisdiction based upon 28 U.S.C. 1332 is established.

**PERSONAL JURISDICTION**

8. Toyota Japan introduced into the stream of worldwide commerce, vehicles which it designed, manufactured, tested, inspected and marketed, alone and in conjunction with or through its wholly owned and controlled subsidiaries, TOYOTA MOTOR CORPORATION, LTD., TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, DBA TOYOTA MOTOR MANUFACTURING NORTH AMERICA, INC., TOYOTA MOTOR NORTH AMERICA, INC., AND TOYOTA MOTOR SALES, U.S.A., INC., and authorized Toyota dealers. The Defendants knew at all relevant times that some of those vehicles would be sold, used and serviced in the State of Texas. Having sold literally hundreds of thousands, if not millions, of their vehicles in Texas, to Texas consumers, the Defendants cannot be heard to complain when called to respond to complaints of defects involving those same products. The Defendants' contacts with the State of Texas are sufficient such that the Court's exercise of personal jurisdiction over them is proper.

## FACTS

9. At the time of the incident in question, DIEDRA FERGUSON owned the subject vehicle, a 1998 Toyota Camry (VIN No. JT2BG22K9W0174035). This vehicle was designed, manufactured and distributed for sale by the Defendants.

10. On the morning of April 16, 2016, Deidra Ferguson was driving on SH 19 in Huntsville, Texas in the subject vehicle when she stopped in response to a traffic control signal light at the intersection of SH 19 and Old Colony Rd. She was traveling with 3 passengers, including her son, K. H., III.

11. As they sat at the light, a white 2008 Chevrolet C1500 truck driven by Shane Comeaux failed to stop or avoid Ms. Ferguson's vehicle and rear-ended the Camry. Upon impact, the left front driver's seat failed to hold Ms. Ferguson in the front driver compartment, allowing Deidra Ferguson as well as the front driver seat, itself, to enter in to the rear passenger compartment striking and injuring K. H., III, who was sitting behind Deidra Ferguson.

## PRODUCTS LIABILITY—GENERAL NEGLIGENCE

12. The Defendants in manufacturing or distributing the 1998 Toyota Camry, (the defective product) and substantially similar vehicles had a duty to the Plaintiffs to do so in a reasonable manner and to ensure that the product was without defect. The Defendant breached this duty when they placed the defective product into the stream of commerce either with knowledge or negligently unaware of its defective nature and propensity to cause harm to individuals such as the Plaintiffs. As a direct and proximate result of the Defendants' negligence, the defective 1998 Toyota Camry, in question has caused harm and injury to the Plaintiffs.

## STRICT LIABILITY FOR DEFECTIVE
## DESIGN, MANUFACTURE AND MARKETING

13. At all times material hereto, TOYOTA MOTOR CORPORATION, LTD., and its wholly-owned U.S. subsidiaries, TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, DBA TOYOTA MOTOR MANUFACTURING NORTH AMERICA, INC., TOYOTA MOTOR NORTH AMERICA, INC., AND TOYOTA MOTOR SALES, U.S.A., INC., were in the business of designing, manufacturing and marketing automobiles and trucks, including the 1998 Toyota Camry (VIN No. JT2BG22K9W0174035) for sale to the public. The Defendants are thus the "manufacturers" and "designers" of the Camry. At some point after its manufacture, they placed the Camry in question into the stream of commerce in the United States. By such action, the Defendants became liable under the doctrine of strict liability in tort for injuries or damages caused by the defects arising out of the 1998 Toyota Camry (VIN No. JT2BG22K9W0174035) production and sale.

14. At the time, the 1998 Toyota Camry in question, was introduced into the stream of commerce, it contained a design defect in that the occupant restraint system, of which the seat back and head restraint are primary parts, failed to restrain Ms. Ferguson in the front seat area. This design defect rendered the Camry unreasonably dangerous as designed, taking into consideration the utility of the Camry and the risk involved in its use. Safer alternative occupant restraint system designs existed which, in all reasonable probability, would have prevented or significantly reduced the risk of rearward seat failure and would not have substantially impaired the Camry's utility. These alternative designs were economically and technologically feasible at the time the Camry in question left the control of the Defendants by the application of existing or reasonably achievable scientific knowledge. Said design defect was a producing cause of the injuries in question.

5

15. The Defendants, at all times relevant to this action, engaged in the business of designing, manufacturing, marketing, distributing, or selling 1998 Toyota Camrys with the defective occupational restrain system, specifically defective seatback, for sale to the general public.

16. The Defendants knew and intended that their occupational restrain system, in their 1998 Toyota Camrys were designed, manufactured, marketed, distributed, or sold by the Defendants would be purchased and used by persons who would rely upon the Defendants. The Defendants further expressly represented to the consuming public that their occupational restrain system, specifically seatback installed in their 1998 Toyota Camrys were safe and that the vehicle, as a whole, was safe for operation.

17. Furthermore, there was a failure by the Defendants to warn purchasers or users of the unsafe design characteristics of the occupant restraint system of the Camry, or that the Camry's restraint system might not adequately restrain in a rear impact. Such defects were known or, by the application of reasonably developed human skill and foresight, should have been known to the Defendants. These defects rendered the Camry unreasonably dangerous as marketed.

18. The 1998 Toyota Camry, at the time of purchase, was defective and unsafe for its intended purpose in that it was not safe for operation. Specifically, occupational restraint system and specifically its seatbacks were defectively designed, manufactured, and marketed, since it contained defects which failed to adequately restrain individual in the front driver seat in a rear end impact.

19. The Defendants are jointly liable under the doctrine of strict liability in tort for unsafe and unreasonably dangerous occupant restraint characteristics arising out of the design,

manufacture or marketing of the Camry in question, to the extent such defects were a producing cause of the injuries in question and the Plaintiffs' subsequent damages.

20. Plaintiffs are informed and believe, and thereon, allege that the Defendants:

a. knew or should have known that the 1998 Toyota Camry, and others substantially similar to it, designed, manufactured, marketed, distributed, or sold by the Defendants were defective and dangerous in the manner alleged above;

b. knew or should have known that because of these defects, this 1998 Toyota Camry and others substantially similar to it could not safely be used for the purposes for which they were intended;

c. knew or should have known that this 1998 Toyota Camry and others substantially similar to it were defective and dangerous, and in conscious disregard of the safety of the public, placed them in the stream of commerce within public markets, without warning customers or the unknowing public of the defects;

d. knew or should have known that when this 1998 Toyota Camry and others substantially similar to it were placed in the stream of commerce, they would be sold to and used by the general public without inspection for defective occupational restraint system, specifically the seatbacks.

e. represented that the 1998 Toyota Camrys were safe when in fact they were not.

f. The Defendants in designing, manufacturing, marketing, distributing, or selling this vehicle and others substantially similar to it, had a duty to the

7

Plaintiffs and their customers to do so in a reasonable manner and to ensure that the product was without defect. The Defendant breached these duties by placing the defective product and others substantially similar to it into the stream of commerce when they knew or reasonably should have known of the products' defective nature and of their propensity to cause harm.

### PRODUCTS LIABILITY—
### DEFECT IN DESIGN, MANUFACTURE, AND ASSEMBLY

21. The 1998 Toyota Camry with defective occupational restraint system at issue and others substantially similar to it that are the subject of the instant action were not reasonably fit, suitable, or safe for their intended use by reason of defects in their design, manufacture, labeling, or assembly, which caused them to be dangerous including, inter alia, incapable of being safely used in the manner labeled so as to prevent injury, movement of the passenger after collision with other cars or persons, or upon impact with another object, person, or vehicle.

22. The defect in design, manufacture, labeling, or assembly existed at the time the Defendants placed the vehicle at issue and others substantially similar to it into the stream of commerce. The occupational restrain system at issue was being used in their intended and reasonably foreseeable way when they caused injury to the Plaintiffs. As a direct and proximate result thereof, the Plaintiffs have been injured and damaged.

### PRODUCTS LIABILITY—
### FAILURE TO WARN OF DANGER IN USE OF PRODUCT

23. At all relevant times the vehicle at issue, and others substantially similar to it manufactured or distributed by the Defendants, were defective as a result of the fact that their occupational restraint system were defectively designed and manufactured and the Defendants failed to give adequate warning that the particular risk rendered the product unsafe for its intended

8

or reasonably foreseeable use. The Plaintiffs are informed and believe and thereon allege that at all relevant times the Defendants had specific knowledge of the risk or could have known of the risk by the application of scientific knowledge available at the time of the manufacture of the product. At all times herein mentioned, the Defendants knew the vehicle at issue and others substantially similar to it were defective in the manner herein alleged, that in all likelihood the vehicle at issue and others substantially similar to it would cause serious injury, damage, and/or death as a result of the increased risk of injuries. Notwithstanding this knowledge, the Defendants failed to give any notice and/or proper warn of this significant risk of harm, thus causing them to injure the Plaintiffs and other members of the general public. Had the Plaintiffs known of the risks involved with the vehicle at issue and others substantially similar to it, they would not have purchased or consented to use of the Defendants' product for use. As a direct and proximate result of the Defendants' failure to warn of the 1998 Toyota Camry's propensity to allow front seat passengers or drivers to enter into the rear compartment after an even minimal rear end collision, Plaintiffs were injured.

## **NEGLIGENCE**

24. Plaintiffs allege that TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, DBA TOYOTA MOTOR MANUFACTURING NORTH AMERICA, INC., TOYOTA MOTOR CORPORATION, LTD., TOYOTA MOTOR NORTH AMERICA, INC., TOYOTA MOTOR SALES, U.S.A., INC. and FUJIO CHO, individually and jointly, committed acts of omission and commission in designing, testing, evaluating, manufacturing, marketing and in failing to warn with regard to the Camry, which acts, taken separately or together, constitute negligence. These acts or omissions include, but are not limited to, creation of a vehicle whose occupant restraint system (primarily the seat and head restraint) will not adequately restrain and

protect the front seat driver in a reasonably foreseeable rear impact. Such negligent acts or omissions were, in whole or in part, a proximate cause of the injuries in question.

## GOVERNMENT STANDARDS

25. The mandatory federal safety standards or regulations applicable to occupant restraint systems, and more particularly to seats (FMVSS 202, 207, 208,) were inadequate to protect the public from foreseeable risks of injury or damage.

## DAMAGES

26. As a proximate result of Defendants actions and omissions, herein described DIEDRA FERGUSON has suffered mental anguish, incurred reasonable and necessary medical as a result of her son's medical care and treatment, incurred other pecuniary expenses, loss of services, sustained economic losses (including loss of earning capacity and actual earning), and loss of consortium. These expenses and damages will, in all reasonable probability, continue in the future.

27. As a proximate result of Defendants actions and omissions, herein described, K. H., III, a minor, has suffered physical pain and mental anguish, physical and mental impairment, incurred reasonable and necessary medical as a result of his medical care, incurred other pecuniary expenses, sustained economic losses (including loss of earning capacity), and is permanently disfigured and disabled for life as a result of the injuries he sustained. These expenses and damages will, in all reasonable probability, continue in the future.

## INTEREST

28. Plaintiffs seek pre-judgment and post-judgment interest at the maximum rate allowed by law.

## JURY TRIAL

29.     Plaintiffs request a jury trial of the above-entitled lawsuit. In support of this application, Plaintiffs would show that the appropriate jury fee has been paid to the district clerk.

## EXEMPLARY DAMAGES

30.     Defendants' acts and omissions were grossly negligent, reckless, and involved an entire want of care. These damages resulted from an objective and subjective conscious indifference to the rights, welfare and safety of the Plaintiffs. Plaintiffs suffered harm to which the Plaintiffs seek recovery of exemplary damages resulting from Defendants' fraud, malice, willful acts, omissions or gross neglect which, when viewed objectively from the standpoint of the Plaintiffs at the time of this incident, involves an extreme degree of risk considering the probability and magnitude of the potential harm to Plaintiffs. The Defendants had actual, subjective awareness of the risks involved but nevertheless proceeded with conscious indifference to the rights, safety, or welfare to Plaintiffs. Plaintiffs therefore seeks exemplary damages.

## PRAYER

31.     Plaintiffs pray that the Defendants be cited to appear and answer herein, that this cause be set for trial before a jury, and that Plaintiffs recover judgment of and from the Defendants, jointly and severally, for Plaintiffs' damages together with the costs of suit, pre-judgment and post-judgment interest, reasonable and necessary attorneys' fees, litigation expenses, and such other and further relief to which Plaintiffs may show themselves justly entitled.

Respectfully submitted,

**PROVOST ★ UMPHREY LAW FIRM, L.L.P.**
490 Park Street
P.O. Box 4905
Beaumont, TX 77704
(409) 835-6000
Telefax: (409) 813-8605

By: _____
James E. Payne
jpayne@pulf.com
State Bar No. 00788171
Ronnie Turner, Jr.
rturner@pulf.com
State Bar No. 24075533

ATTORNEYS FOR PLAINTIFFS

## JURY DEMAND

Plaintiff respectfully requests a trial by jury.

_____
RONNIE TURNER, JR.

12